THE PEOPLE OF THE STATE OF NEW YORK ex rel. MASONIC HALL ASSOCIATION OF SARATOGA SPRINGS, N. Y., Relator, *v.* J. B. WHITE, as Commissioner of Accounts, and Others, Respondents.

Supreme Court, Saratoga County, March 5, 1926.

Taxation — exemption — real property held by corporation solely for use of Masonic bodies not exempt from taxation under Tax Law, § 4, subd. 7 — substantial portion of property occupied by Masonic club — said corporation not organized exclusively for purposes recited in statute — fact that corporation adopted resolution to apply its net income to relief and care of worthy and indigent members of Masonic fraternity, their wives and orphans does not bring corporation within statute — said corporation did not attempt to comply with Benevolent Orders Law, § 7 — relator not entitled to have claim to partial exemption from taxation considered where it did not make claim in its petition filed on grievance day as provided by Tax Law, § 37.

Real property held by a corporation organized solely for the purpose of holding real property for the use of Masonic bodies, which are members of the corporation, is not exempt from taxation under subdivision 7 of section 4 of the Tax Law, since the corporation is not organized exclusively for any of the purposes set forth in said statute, for it is conceded that a substantial part of the property is occupied by a Masonic club, organized for the purpose of social recreation and not for any charitable, benevolent or educational purpose.

Said property is not exempt under the same subdivision which grants exemptions to real property held by fraternal bodies or associations, " the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans," since it appears that in this case the certificate of incorporation does not obligate the relator to apply its net income to any of the aforesaid purposes.

The mere fact that it adopted a resolution to apply its net income " for the relief, support and care of worthy and indigent members, their wives, widows and orphans " did not bring the corporation within the statute, particularly where no attempt was made to comply with section 7 of the Benevolent Orders Law, for in order to make said resolution effective it was necessary that it be adopted by the several Masonic bodies comprising the corporation.

Relator is not entitled to have its claim to partial exemption from taxation considered, for the reason that it did not make that claim in its protest filed with the assessing officer on grievance day as provided for by section 37 of the Tax Law; objections not specifically pointed out to assessors on grievance day are not available on certiorari.

PROCEEDING to review a tax assessment against the relator's real property known as the Masonic Temple in the city of Saratoga Springs for the year 1926.

*Corliss Sheldon,* for the relator.

*Sheridan P. Wait* [*John A. Slade* of counsel], for the respondents.

HEFFERNAN, J. The relator is a joint, non-stock corporation organized under the provisions of section 7 of the Benevolent Orders Law (as amd. by Laws of 1924, chap. 245).* Rising Sun Lodge No. 103 F. & A. M., chartered by and owing allegiance to the Grand Lodge of Free and Accepted Masons of the State of New York; Rising Sun Chapter No. 131 R. A. M., chartered by and owing allegiance to the Grand Chapter of Royal Arch Masons of the State of New York; Washington Commandery No. 33 K. T., chartered by and owing allegiance to the Grand Commandery of Knights Templar of the State of New York; Cryptic Council No. 37 R. & S. M., chartered by and owing allegiance to the Grand Council of Royal and Select Masters of the State of New York; four Masonic lodges of Saratoga Springs, N. Y., are united in the formation of this corporation.

The statute under which the relator is incorporated expressly authorizes any number of Masonic bodies to unite in forming a corporation such as relator. The date of the original incorporation does not appear, but in July, 1924, the relator's certificate was amended, apparently for the purpose of bringing it within the provisions of the statute as to tax exemption, and the purposes of its creation are there specified as follows: " The purposes and objects of said corporation are the acquiring, building and maintaining a building or buildings for its meetings or meetings of the general assembly of its members, and subordinate bodies of the Masonic fraternity, and for the accommodation of other fraternal bodies or associations, and creating, collecting and maintaining a library for the use of the Masonic bodies hereinafter named."

The relator claims to be exempt from general taxation on its real property under subdivision 7 of section 4 of the Tax Law (as amd. by Laws of 1924, chap. 489) and such exemption is sought on three grounds:

(1) " The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation shall be exempt from taxation."

(2) " Further provided that the real property of any fraternal corporation, association or body created to build and maintain a

---

* Since amd. by Laws of 1925, chap. 382.—[REP.

building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or associations, the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans, shall be exempt from taxation."

(3) If the total exemption is not allowed then for partial exemption by virtue of the following provisions of the same statute: " The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion, shall be subject to taxation."

The material facts are stipulated. By the terms of this stipulation it appears that the various Masonic bodies from which the relator is formed are engaged in benevolent and charitable work and regularly contribute to the relief of worthy and indigent members of the Masonic fraternity, their wives, widows and orphans. The relator owns and maintains the real property in question consisting of a building located on the east side of South Broadway. The building has a cellar used for boiler room and coal bins, and there is located the heating plant for the entire building; the ground floor is divided into a large and small banquet room, kitchen, library, picture gallery, hallway and a club room; the second floor is used for lodge paraphernalia and robe rooms; there are three rooms above the second floor likewise used for paraphernalia and robe rooms; the building consists of two parts, namely, an old part erected on the front portion of the lot and known as the " House of Pansa " building which was already erected upon the real estate at the time it was acquired by relator; a new building in the rear erected since the relator became possessed of the property. The Masonic Club occupies, under a verbal lease, the ground floor of the House of Pansa building with the exception of the hallway and picture gallery; its rooms are equipped with chairs, card and pool tables, radio, phonograph and piano, and an historical collection of Indian and war relics, and also with

**664** People ex rel. Masonic Hall Association *v.* White.

Supreme Court, March, 1926. [Vol. 126

statuary, ornaments, pictures, utensils and furniture illustrating ancient Roman art and culture, and on its walls are historical and mythological pictures. Spring water, soft drinks, cigars and candy are sold at the desk to members of the club only; the club room is equipped with a library, magazines and books. This club is organized for the purpose of social recreation and not for any charitable, benevolent or educational purposes and is composed solely of Masons belonging to one or more of the four Masonic bodies. Many Masons, though eligible, do not belong. The rooms of the club are used exclusively by the members and are not open to or used by the public. Masons who are not members are not entitled to its privileges. Members of the club, who use the card and pool tables, pay a small fee for each game played. It is not run for profit and its operations result in annual losses. It declares no dividends and is not engaged in business. In addition to the sum paid to the relator by the club annually as or in lieu of rent. it pays its own caretaker and provides its own supplies and lighting, The club derives its income from substantial dues paid by each of its members. None of the officers, members or employees of the club, or of relator, receives or is entitled to receive any compensation or pecuniary profit or reward, with the exception of the caretaker and janitor who are paid reasonable compensation for their services. The picture gallery and hallway extend from the front of the structure along the entire north side of the House of Pansa building, and the walls are hung with paintings depicting historical scenes. The kitchen and banquet rooms are used for the preparation and service of banquets to the members of the various Masonic orders. The kitchen and small banquet room are used by the Masonic Club for banquets to its members. The entire second floor and the three rooms above are used by various fraternal bodies connected with the order for general lodge purposes, and for the storage of paraphernalia used in the ceremonial work. The property is occupied and used only by the fraternal bodies connected with the Masonic fraternity. No part of the building is used by the public. There are no sleeping rooms, restaurants, stores or shops on the premises and no commercial business is conducted there. The relator holds its meetings in the building. Its income is derived from fixed annual rentals, paid by the various bodies which occupy the building. The relator declares no dividends and has no capital stock and is not engaged in any commercial enterprise. On July 25, 1923, relator adopted and entered upon its book of minutes the following resolution:

" *Resolved,* That the entire net income of this association, after deducting interest on its bonds, given to acquire, construct and

maintain the Masonic Temple Building on South Broadway, Saratoga Springs, N. Y., heating, lighting, janitorship and the other expenses of upkeep and maintenance of said building, be and it is hereby appropriated exclusively for and to be actually applied and used by this association for the relief, support and care of worthy and indigent members of the Masonic fraternity, their wives, widows and orphans."

This resolution is still in force. Relator's entire net income for the current year will approximate $300, and its trustees acknowledge that they hold the same in trust to, and will, exclusively apply the same for the relief, support and care of worthy and indigent members of the Masonic fraternity, their wives, widows or orphans in accordance with the terms of this resolution. The building is not architecturally designed or constructed for business purposes. The new part was specially designed for lodge purposes and the old building is a reproduction of an ancient Roman structure. This old building is constructed almost wholly without windows and its interior is cut up into a number of comparatively small rooms running along the north, south and west sides of the main room, and in imitation of the ancient Roman houses about thirty-five large columns, each about two feet in diameter, are scattered about the ground floor. Saratoga's principal places of business are located north of Spring street and the Masonic Temple is located about 1,000 feet south of that street.

The stipulation, which is very comprehensive, includes many other matters but the relevant provisions are as above stated.

Statutes exempting property from general taxation are not favored and are to be strictly construed as against the property owners. They will not be sustained unless such clearly appears to have been the intention of the Legislature. An exemption from taxation must be expressed in clear and unambiguous language and appear to be indisputably within the intention of the Legislature. Taxation is the rule and exemption the exception. (*People ex rel. N. Y. Lodge No. 1* v. *Purdy*, 179 App. Div. 805; affd., 224 N. Y. 710; *People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76; affd., 200 N. Y. 585; *Matter of Francis*, 121 App. Div. 129; affd., 189 N. Y. 554.) *Matter of Syracuse University* (214 App. Div. 375), cited by the learned counsel for the relator, does not decide anything to the contrary.

In order to justify exemption on the first ground it is necessary that the real property shall be " used exclusively " for carrying out one or more of the purposes enumerated in the statute. In the case at bar it is conceded that a substantial part of the relator's property is occupied by a Masonic club, organized for the purpose

**666** People ex rel. Masonic Hall Association *v.* White.

Supreme Court, March, 1926.                    [Vol. 126

of social recreation and not for any charitable, benevolent or educational purpose. That it is composed entirely of Masons does not alter the situation. The statute does not accord exemption from taxation to property used by social organizations, and when property is so used it becomes taxable, irrespective of who the owner may be. It was very recently decided by Mr. Justice Staley in *People ex rel. Troy Masonic Hall Association* v. *Byrne* (125 Misc. 212) that a corporation such as relator is not organized for charitable or benevolent purposes within the meaning of these terms as used in the Tax Law and that its real property is not entitled to exemption from taxation by reason of the charitable or benevolent character or activity of the Masonic bodies from which its trustees are chosen or which may be members of the relator or tenants of its building. The relator is a joint corporation and, as pointed out by Mr. Justice Staley in the case cited, the bodies which united in its formation are separate and distinct entities from it, and it is a separate and distinct entity from them.

The provisions of the statute invoked by the relator to sustain its claim to exemption on the second ground, it seems to me, contemplate a building used solely and distinctly for lodge purposes and not as a club house for its members. (*People ex rel. N. Y. Lodge No. 1* v. *Purdy, supra.*) The use of a portion of the building in question by the Masonic Club forfeits its claims to exemption. (*People ex rel. Perry Temple Association* v. *Clark,* 125 Misc. 625.) Counsel for the relator earnestly urges that this is not an ordinary club; that it is not run for profit and that it is simply a group within the Masonic order and a means for the purpose of holding its members together for strictly Masonic duties. The fact that membership in the club is limited strictly to members of the Masonic order seems to me to be of no importance. If the relator may sublet a portion of this building to members of the Masonic order for recreational and club purposes then certainly under the statute which authorizes its use " for the accommodation of other fraternal bodies or associations " it may lease to the Odd Fellows, the Elks, the Knights of Columbus or any similar organization and still be within the exemption. Relator's counsel relies on *National Navy Club of N. Y., Inc.,* v. *City of New York* (122 Misc. 89) as authority for his position. As I read it that decision does not warrant such a conclusion. In that case the plaintiff was incorporated " to encourage social intercourse among enlisted men in active service of the United States Navy and Marine Corps, including those who have served honorably in either branch; to promote among them a spirit of patriotism and a regard for law and order; to improve conditions for those in the service and strengthen their

morale; and to establish and maintain in the City of New York for their use and accommodation suitable quarters  *  *  *." In that case the court was considering a corporation formed for other purposes and the certificate of incorporation expressly sanctioned the enterprise. In the case at bar the certificate of incorporation does not authorize the relator to use its property for club purposes.

It is claimed here that the facts differentiate this application from any other reported case. That, possibly, is true. The principle underlying them all, however, is the same.

The relator, in its brief, concedes that exemption was properly denied in *People ex rel. Perry Temple Association* v. *Clark (supra)* because the certificate of incorporation showed that one of the objects of incorporation was " social recreation." If the certificate in question made provision for a social club it would be subject to the same condemnation and the relator could not lawfully claim exemption. If that be true then certainly it cannot do indirectly what it could not do directly. It is no answer to say that the certificate of incorporation does not authorize the maintenance of a social club. That is just one of the uses which this relator is making of its property.

The resolution adopted by the relator as to the disposition to be made of its income and the statement that its trustees acknowledge that they will apply the same in accordance therewith do not aid the relator's cause. A social club cannot be made in effect a charitable institution by providing that a small net income shall annually be applied to charity. (*People ex rel. New York Lodge No. 1* v. *Purdy, supra.*) Furthermore, the relator is not obligated by the provisions of its certificate of incorporation to make such application of its income, and in fact no such application has been made nor has there been any attempt to comply with the provisions of section 8 of the Benevolent Orders Law, as amended by chapter 349 of the Laws of 1923. In order to be effective as recited in said statute the resolution should not be adopted by the relator but by " the several bodies comprising such corporation " by a two-thirds vote. In writing for the Court of Appeals in *People ex rel. Mizpah Lodge* v. *Burke* (228 N. Y. 245) Judge POUND said: " The disposition of the net income to charitable purposes does not help the case. Relator's enterprise is charitable rather than mercenary, but it is not the kind of charitable enterprise that comes within the letter of the statute. If it had been the intention of the legislature to exempt from taxation all lodge buildings the net income of which was devoted to charitable purposes, it would doubtless have expressed such intention without the use of unnecessary or ambiguous words. So long as the state has not clearly indicated its deliberate purpose

to look with special favor upon the use of lodge property for all the purposes that relator uses its property for, we may not construe the law for its benefit."

As I view it the relator is not entitled to have its claim for partial exemption considered. No foundation for such relief was laid in the protest filed with the assessing officer on grievance day as provided by section 37 of the Tax Law (as amd. by Laws of 1924, chap. 491). In that petition the relator alleged " that said corporation is organized exclusively for fraternal, charitable, benevlent and educational purposes; that said property is used exclusively for carrying out thereupon such purposes, and also further alleges that it is totally exempt from taxation, and is illegally and erroneously assessed and in any event is over-valued, and is assessed at a higher proportionate valuation than other property on the same assessment roll."

No claim was made at that time that all portions of the building not occupied by the Masonic Club were exempt from taxation. No such suggestion was made to the assessing officer in the petition. There is no allegation in that petition upon which any claim for partial exemption can be predicated and the writ was not allowed on that theory. Objections not specifically pointed out to the assessors on grievance day are not available on certiorari. (*People ex rel. Powdered Milk Co. of America* v. *Rowe,* 161 N. Y. Supp. 1064; *People ex rel. Champlin* v. *Gray,* 185 N. Y. 196; *People ex rel.* v. *Commissioners of Taxes, etc.,* 99 id. 254; *People ex rel. W. S. R. R. Co.* v. *Adams,* 125 id. 471.) Relator's counsel asserts that the pleadings should be liberally construed and relief should not be denied on any technical ground. If this were solely a question of pleading that would be true. The difficulty here lies in the nature of the protest filed with the assessing officer. The relator must stand on the objections there formulated and the court cannot at this date permit any amendment in that respect. The partial exemption clause of this statute was construed and applied in *Matter of Syracuse University* (*supra*). In that case the court held that the ground floor of the building, rented as a store, was not exempt but that the two floors above were exempt. The same subject seems to have been considered in *People ex rel. Young Men's Association* v. *Sayles* (32 App. Div. 197); *People ex rel. Catholic Union* v. *Sayles* (Id. 203), and *People ex rel. Syracuse Masonic Temple* v. *Ostrander* (105 Misc. 405).

According to the provisions of the stipulation the questions of inequality and over-assessment are not now presented. These issues are reserved for a reference.

For the reasons stated the writ is dismissed so far as the relator's claims to exemption are concerned.