THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE AUTOKEFALOS ORTHODOX SPIRITUAL CHURCH OF SAINT GEORGE, THE TROPEOPHOROS, Relator, against EDWARD F. HALLAHAN, as Commissioner of Assessment and Taxation of the City of Mount Vernon, et al., Respondents.

Supreme Court, Westchester County, March 12, 1948.

*Frances K. Marlatt* for relator.

*Harold Borgwald, Corporation Counsel (Walter B. Sollinger, II,* of counsel), for respondents.

GEORGE H. TAYLOR, JR., Official Referee. This is a reference to hear and determine the issues in four certiorari proceedings in effect consolidated and tried together.

The relator is a religious corporation. It seeks a judicial declaration exempting premises to which it holds title, known as lots Nos. 1, 2, 3, 4 and 5 in Block 2142 on the tax map of the City of Mount Vernon, New York, from the payment of taxes duly assessed thereon, respectively for taxes of 1944, 1945, 1946 and 1947, in 1943, 1944, 1945 and 1946 upon the ground that the premises were used by relator *exclusively* for religious purposes, namely, as claimed by the relator, for a monastery, a church and for the religious instruction of children and adults.

The claim is based on subdivision 6 of section 4 of article I of the Tax Law. Section 4 is entitled "*4. Exemption from Taxation*". It provides as follows: "The following property shall be exempt from taxation:". Subdivision 6 thereof reads in relevant part as follows: (Emphasis mine.) "The real property of a corporation or association organized *exclusively* for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and used *exclusively* for carrying out thereupon one or more of such purposes * * *. But no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees, or if it be not in good faith organized or conducted *exclusively* for one or more of such purposes. The real property of any such corporation or association entitled to such exemption held by it *exclusively* for one or more of such purposes and from which

no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress, or is in good faith contemplated by such corporation or association ''.

Other provisions of subdivision 6 are not here involved.

Relator's property is No. 75 California Road, Mount Vernon. It has the appearance of a small country estate in area four and three-quarters acres, beautifully landscaped. Thereon are a fine two and one-half story colonial residence, two garages, a small swimming pool, a handball court, a pump house, an orchard, a rose garden, a lily pool and a kennel. In one room on the first floor of the residence is a small private chapel, but otherwise that structure presents the appearance of a private home. The relator claims it is a '' monastery ''. The respondents controvert this claim. The second floor of one garage has been converted into a small chapel. There from time to time religious services are held under relator's auspices. The relator has designated the property as '' St. Anthony's Monastery ''. By consent I inspected the *locus in quo* with counsel. From California Road it presents a fine appearance, namely, that of a small but elaborate country estate. There is lettering on the iron gate at the entrance which, taken at its face, suggests that the property is a monastery. Without that information no one would know that it was claimed to be an institution of that character.

The alleged illegal assessments for the purpose of taxation, challenged by the relator, are as follows: For taxes of 1944, $64,900, and for each of the years 1945, 1946 and 1947, $65,000.

The respective contentions made are as follows:

Relator claims that those premises are. owned by it, a duly incorporated religious corporation, pursuant to the Religious Corporations Law, and that the premises are devoted *exclusively* to religious purposes and are thus entitled to exemption from taxation pursuant to article I of the Tax Law which includes the provisions above quoted by me. Respondents on the contrary contend *inter alia* (a) that the premises are *not* devoted exclusively to religious purposes, but in fact are primarily devoted to residential use by the individuals, Mr. and Mrs. Sophocles Metarelis, and their married daughter, Theresa; (b) that such religious activity as occurs at the premises is merely incidental and casual and not exclusive; (c) that the designation '' St. Anthony's Monastery '' is simply a ruse to

mask the true (residential) purposes to which the property is devoted; (d) that the relator has not proven under the rule of *strictissimi juris* which applies to tax exemption, by a fair or any preponderance of the credible evidence, that the corporation is not being used as a guise or pretense within the meaning of the statute and that no one has received any pecuniary benefit of any nature from the corporation and also, according to respondents, that relator has not demonstrated " good faith ".

The respondents urge some other legal objections to the claimed exemption. Those objections, unlike the objections above enumerated, are to my mind technical and not impressive. In this respect they differ from the respondents' objections which I have enumerated (*supra*) and which to my mind are substantial.

In sum respondents contend that the relator has not brought itself within the provisions of article I of the Tax Law, nor complied in spirit with its conditions, that exemption of relator's property would be illegal and that each of the four writs of certiorari should be dismissed.

After careful consideration of the evidence, study of the excellent briefs and my inspection of the property, I am of the opinion that relator is not entitled to the tax exemption claimed.

Subdivision 6 of section 4 of article I of the Tax Law to the extant material, is above quoted. It places an impressive burden upon the relator who must demonstrate by the fair preponderance of the credible evidence as follows: — (a) That relator was organized in good faith exclusively for religious purposes; (b) that the real property involved was used exclusively for religious purposes during the years 1943 to 1946 inclusive; (c) that no officer, member or employee receives a pecuniary benefit therefrom; and (d) that the corporation is not a guise or pretense for making pecuniary profit.

If any requirement (*supra*) is not fulfilled in the evidence, exemption is *not* in order. It must appear that the corporation is altogether free from a profit making purpose. Exemptions are in derogation of the sovereign authority of the State. Statutes conferring them may not be extended beyond their express provisions. They confer a favor on the recipient; who must comply strictly with both the letter and the spirit of such statutes. These truisms are based on judicial rulings (*Lawrence-Smith School* v. *City of New York,* 166 Misc. 856 [SHIENTAG, J.] ; and cf. *Young Women's Christian Assn.* v. *City of New York,* 217 App. Div. 406, affd. 245 N. Y. 562, and *People*

v. *Brooklyn Garden Apts.*, 283 N. Y. 373). As such exemptions are not a matter of right, but a favor, they must be earned by strict compliance with the statutes conferring them; that is to say, the rule *strictissimi juris* applies (*People ex rel. Cornell Univ. v. Thorne*, 184 Misc. 630; *Matter of Kennedy*, 240 App. Div. 20, 23, affd. 264 N. Y. 691).

The foregoing sufficiently states the law in this case, although numerous other authorities to the same effect might be cited.

The evidence is voluminous. The case is unusual. It is presented on both sides by able, diligent and learned counsel. Considerate of the evidence and the applicable law I am of the firm opinion that under the facts inferable from the evidence the relator is *not* entitled to exemption from taxation of the property involved, as claimed. I will rule accordingly.

From the evidence and its implications I find these essential facts:

(1) Relator is a corporation duly organized under article 9 of the Religious Corporations Law, for religious purposes within the meaning of subdivision 6 of section 4 of article I of the Tax Law of New York; it was originally organized in good faith, but as far as its use of the real property here involved from 1943 to 1946 inclusive, is concerned, such use from 1943 to 1946 inclusive has *not* been in good faith *exclusively* for religious purposes. (2) Relator since 1943 has owned the real property involved, a small country estate (4¾ acres) known as 75 California Road, Mount Vernon, New York, and known upon the tax map of that city as Lots 1, 2, 3, 4 and 5, Block 2142. (3) Such real property was duly assessed by the proper public officers for the purpose of taxation for each of the several years 1944, 1945, 1946 and 1947 as follows: — For 1944, total assessments $64,900, and for each of the years 1945, 1946, and 1947, total assessments $65,000. (4) Such real property since 1943 has *not* been devoted exclusively to religious purposes within the purview of article I of the Tax Law. Such religious activity as has characterized its use has been incidental and casual, but not exclusive. (5) The designation of the property by the relator and the persons who control the relator, as " St. Anthony's Monastery " is a mere ruse or device to mask the true purposes (in fact residential) to which the property was devoted during the years in question, although incidentally, casually and at rather frequent intervals religious services were held upon the property during the years mentioned. At these services the persons attending the same, except those few who

live permanently in the residence, came from New York City and other points outside of Mount Vernon. (6) The relator corporation is being used as a guise or pretense for directly and indirectly making a pecuniary profit for two of its members, Angelo Pappas and Sophocles Metarelis who are and have been partners in a considerable restaurant business not conducted upon the premises. The latter, Metarelis, resides in the property with his family, consisting of his wife and daughter and an orphan girl who lives with them. All of these persons use the so-called "monastery" as their home. The presence of a small chapel in one room thereof is a mere incident to the use of the premises as such home. The small chapel in the garage is a like incident.

My conclusion of law upon the found facts stated is that the relator is not entitled to exemption of the property involved from taxation and that each of the four writs of certiorari and the petitions upon which same were granted respectively, should be and the same hereby are dismissed, with only one bill of costs against the relator to be taxed.

While relator's original organization was in good faith, the corporation, as far as its use of the property involved is concerned, was and is clearly a mere "guise" or "pretense" for the making of pecuniary profit for Angelo Pappas and his business partner, Sophocles Metarelis. These two control the relator corporation absolutely in relation to its finances and otherwise. They are two extremely shrewd business men who the evidence shows are really the front, back, top and bottom of the alleged religious enterprise conducted on the property involved. The evidence demonstrates that they have controlled and control the church, its properties and its nominal officials, who are mere puppets in their hands doing their bidding. These two have a penchant for living (rent free) in tax exempt property. Pappas lives and for years has lived in another property (tax exempt or partially so) belonging to the relator and located at 63–41 Bourton St., Queens; but he has visited and slept in the "monastery" "hundreds of times". Sophocles Metarelis and his wife, who is called "Mother Superior Barbara", and their family since 1943 have been actually in permanent residence at the "monastery", rent free, and as they claim, tax exempt; just as they were in the relator's other property in Rego Park, Queens, for years before the Mount Vernon property was acquired. Apparently skilled counsel for the relator

thought it inadvisable to call either Sophocles Metarelis or his wife as witnesses. I have in mind that fact and its implications. Pecuniary profit to them amply appears, as it does to Pappas, frequently an overnight guest at the " monastery ". That relator's nominal officers are mere puppets of Pappas and Sophocles Metarelis and that they control the relator and its nominal officials appear from the testimony of Pappas. He was asked about loans made by himself and Metarelis to the relator. He replied " We were really the Church and we lent money to the Church because we worked for the Church and were the financial heads of the Church, we have everything in our hands." So they have. The testimony of their nominal church officials, Pavlakis, president of the board of trustees, and Anastos, treasurer, emphasized the fact that they were mere puppets of Pappas and Metarelis who pulled the strings which made them jump. Other evidence in the record shows amply the absolute control of the relator by these two men. The relator has been and is being used by them as the " guise " or " pretense ", which under the Tax Law prevents exemption of the Mount Vernon property, the primary use of which is residential with some religious coloration calculated to impose upon the assessor, but in this case not efficient for the purpose.

That the original purpose of Sophocles Metarelis and his wife in coming to Mount Vernon was to buy a *residence* appears from the uncontradicted testimony of Mr. Levy, a prominent Mount Vernon broker, who showed to them and their associate, another Metarelis called " Father John ", no less than fifty houses. I credit his testimony. Through another broker the property involved was acquired in the name of the relator, but really by these two who furnished most of the consideration, which was returned to them in 1946 out of an award made to the relator for the 114th Street property. The so-called monastery has been the home of the Metarelis family ever since. I reject as false the testimony on behalf of the relator that a home in Mount Vernon was sought for some unnamed lady who desired to get married. It was in fact sought for Sophocles Metarelis and his family.

The numerous and complicated financial transactions of Pappas and Metarelis with the relator, disclosed in the evidence demonstrate clearly that this pair absolutely controlled the relator and its nominal officials in the transactions culminating in the purchase of the Mount Vernon property in 1943, nomi-

nally by relator for religious purposes, but in reality for a residence for Metarelis and his family, who have lived there ever since. Metarelis in the interval has commuted to and from his business in New York. As indicated before, Pappas frequently remained in the premises overnight — " hundreds of times ".

The underlying and primary use of the Mount Vernon property is residential. Casual, occasional and incidental use of it for religious purposes by the relator is insufficient to warrant exemption. The statute requires that the religious uses shall be *exclusive.* The fact that Metarelis and his family have adopted religious titles of " Brother ", " Mother Superior " and " Sister " does not alter the fact that the place is their residence and that they live there permanently as a family. Further, they are not ordained ministers of the gospel.

Summarizing, the premises involved are not devoted to religious use exclusively. Hence, they cannot be exempted from taxation.

The evidence clearly demonstrates that this home or residence and grounds are designated as " St. Anthony's Monastery " as a mere subterfuge by relator, Pappas and Sophocles Metarelis who control the relator, to disguise the real nature and character of the premises. Here is a twenty-room house with four and three-quarter acres of landscaped ground with outbuildings, devoted to the use of the Metarelis family and to the care by them of a solitary orphan. This place is in no respect a real monastery.

I respectfully overrule respondent's objection, learnedly urged, that relator is not a properly incorporated religious corporation, and that for such reason and others mentioned in counsel's brief, cannot claim exemptions.

Other and valid reasons which I have indicated above, urged by respondents' counsel, are quite sufficient to warrant the entry of a final order in favor of respondents. This case is important and unusual. It was presented to me in a most efficient manner by learned counsel on both sides. Possibly the determination of myself, a single judicial officer herein should be reviewed by higher judicial authority. In the event of such review undoubtedly the appellate court will allow the voluminous exhibits to be handed to it on the argument and not printed.

Each of the four petitions is dismissed. Each of the four writs of certiorari is dismissed. One bill of costs is awarded to respondents to be taxed.

Settle on notice before me at Mount Vernon a formal decision containing findings of fact and conclusions of law in accordance with the above. Each party may present requests to find, upon which I will pass. Thirty days' stay is awarded to the relator after notice of entry of final order, and sixty days to make and serve a proposed case.