(74 App. Div. 553.)

PEOPLE ex rel. DELTA KAPPA EPSILON SOC. OF HAMILTON COL-
LEGE v. LAWLER et al., Assessors.

(Supreme Court, Appellate Division, Fourth Department.   July 8, 1902.)

1. TAXATION—EXEMPTION—PROPERTY USED FOR EDUCATIONAL PURPOSES—FRA-
TERNITY HOUSE.
Under Tax Law, § 4, subd. 7, as amended by Laws 1897, c. 371, pro-
viding that the real property of a corporation organized exclusively for
moral or mental improvement, or for educational, scientific, or literary
purposes, used exclusively for carrying out one or more of such pur-
poses, shall be exempt from taxation, a college fraternity chapter house,
used chiefly as a place of abode for the members of the fraternity, is not
used "exclusively" for any of the purposes mentioned in the statute,
though the fraternity was organized for such purposes, and is not ex-
empt.

Appeal from special term, Oneida county.

Proceeding by the people, on relation of the Delta Kappa Epsilon
Society of Hamilton College, against E. F. Lawler and others, as
assessors of the town of Kirkland. From an order disproving the
findings and conclusions of a referee, and exempting the property
of relator from taxation, and awarding costs against respondents
personally (73 N. Y. Supp. 1082), they appeal.   Reversed.

This proceeding was commenced on the 11th day of September, 1900, by
the service of a petition, accompanied by a writ of certiorari, directing the
defendants, who were the assessors of the town of Kirkland, Oneida county,
to make return thereto at a special term of the supreme court to be held
on the 6th day of October following.   Upon the return to such writ an order
was made appointing a referee to take proof of the several matters in
issue, and to report the same, together with his findings of fact and conclu-
sions of law thereon.   The questions at issue involved the right of the
relator to exemption from taxation of certain real estate situate in the town
of Kirkland aforesaid, which had been assessed by the defendants for the
year 1900 at the sum of $3,500, and the learned referee, after taking all the
evidence offered by either party, filed his report, wherein he recommended
that the writ be dismissed, and the relator's property held for taxation.
Upon the 6th day of July, 1901, the court at special term overruled the re-
port and decision of the referee, and directed judgment in favor of the re-
lator, declaring its property exempt from taxation, and awarding costs
against the defendants personally.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and HISCOCK, JJ.

Louis M. Martin, for appellants.
Charles Bell, for respondent.

ADAMS, P. J.   The relator, the Delta Kappa Epsilon Fraternity,
is one of seven Greek letter societies existing at Hamilton College,
in this state.   It is a domestic corporation, and as such was duly
organized under the laws of this state in the year 1878, its certificate
of organization stating its objects and purposes to be "literary, and
for the promotion of the fine arts."   The society consists of 39 chap-
ters, located in various parts of the United States and Canada, with
a membership of about 15,000 individuals, and this particular chapter
at the time in question was composed of 35 active members.   It

owned a chapter house and lot, located upon College street, in the village of Clinton, the building being three stories in height above the basement.   In the basement were located a dining room, kitchen, coal room, toilet room, and cellar.   Upon the ground floor were a hall, with an alcove, a parlor, library room, and two other rooms, which were occupied by a man and his wife, who furnished board and took charge of the rooms for the members boarding in the house. Upon the second floor were five sleeping rooms, a study room, and a "society room."   The furniture in the sleeping rooms belonged to the respective occupants thereof, and the other furniture in the house was owned by the relator, as was also a library consisting of about 500 volumes of books of reference and works of fiction.   The active members of the society all boarded in the house, and 14 of them lodged there under an arrangement with a Mr. and Mrs. Plank, who occupied the two rooms on the ground floor, and enjoyed the use of the kitchen, dining room, etc.   During the year commencing September, 1899, the members lodging in the house paid into the treasury of the relator $502.50 for the use of these rooms, and this sum was used in part to pay for a well upon the premises, in part to defray the expenses of repairs, and in part to pay an indebtedness of the relator.   In addition to the sum received from this source, a tax of $400 was levied upon all the active members to defray the cost of heating the building and certain other minor and incidental expenses.   There were also certain per capita taxes which were applied towards the payment of books and periodicals purchased for the library and general fraternity expenses.   With the exception of the society room, the building in question was used for the purpose of furnishing the active members of the society with a boarding place, at which they might enjoy the privileges of home life, and meet for social recreation and fellowship without intrusion from uninvited guests.   It was at all times accessible to members of the fraternity belonging to other chapters, and upon special occasions was thrown open to the public or to such privileged persons as were fortunate enough to be the recipients of invitations; but it was more particularly the private resort and abiding place of such of the relator's members as were in attendance at Hamilton College.

There is very little, if any, controversy respecting the facts above stated, substantially all of which were found by the learned referee upon evidence which amply sustained his findings, and the single question to be determined is whether upon these facts the relator's claim to exemption from taxation can be sustained.

The relator rests such claim upon subdivision 7 of section 4 of the tax law (Laws 1896, c. 908, as amended by Laws 1897, c. 371), which, so far as applicable to the case under consideration, reads as follows, viz.:

"The real property of a corporation or society organized exclusively for the moral or mental improvement of men or women or for * * * educational, scientific, library, literary * * * purposes, * * * or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation or association, shall be exempt from taxation."

It requires, we think, but a cursory glance at this statute to apprise any one of the fact that the legislature has imposed two conditions to the exemption of the real property of a corporation from taxation; one being that it shall have been organized exclusively for one or more of the purposes therein specified, and the other that the property for which exemption is claimed shall be used exclusively for such purpose or purposes.

The learned referee has found, in response to the request of the relator's counsel, that the corporation in question was organized exclusively for the moral and mental improvement of men, and for literary, library, scientific, and educational purposes, although its charter declares the objects and purposes of its organization to be simply "literary and for the promotion of the fine arts." However, the purposes for which a corporation is organized and those for which its property is used are, for obvious reasons, quite distinct and independent matters. The two requirements must concur; for otherwise the original corporators might, if so disposed, declare the object of their incorporation to be one which would entitle the corporate real estate to exemption from taxation within the terms of the statute, while as a matter of fact it was used for an entirely different purpose, and one which would not entitle it to exemption. It follows, therefore, in view of the finding of the learned referee, that the important and controlling question for our determination relates to the use to which the relator's property was put.

That it was to some extent, at least, used "for carrying out thereupon" one or more of the purposes specified in the statute is doubtless true. For instance, it appears that the relator's chapter house was furnished with a respectable library, and it is quite reasonable to assume that its members used this library at times for educational, scientific, and literary purposes; but this fact does not answer the requirement of the statute, unless it also appears that the building as a whole was used exclusively for one or more of such purposes. Church of St. Monica v. Mayor, etc., of City of New York, 119 N. Y. 91, 23 N. E. 294, 7 L. R. A. 70; People v. Feitner, 168 N. Y. 494, 61 N. E. 762.

Now, the adverb "exclusively" is defined by lexicographers to mean, "with the exclusion of all others; without admission of others to participation" (Cent. Dict.); and with this definition in mind it is apparent that the partial or occasional use of the relator's chapter house for literary, educational, or scientific purposes is not sufficient to sustain its claim to exemption, unless it can be said that such purposes are primary and inherent, while all others are secondary and incidental; for although we ought not, perhaps, to give to the word "exclusively" an interpretation so literal as to prevent an occasional use of the relator's property for some purpose other than one or more of those specified, yet the policy of the law is to construe statutes exempting property from taxation somewhat rigidly, and not to permit such exemption to be established by doubtful implication. In other words, the legislative intent to exempt any property from taxation can never be presumed, but must always be expressed in language so clear as to admit of no argument. People v. Board of Taxes and Assessments

Com'rs, 76 N. Y. 65; People v. Davenport, 91 N. Y. 574; People v. Commissioners of Taxes of City of New York, 95 N. Y. 554; Railroad Co. v. Thomas, 132 U. S. 174, 10 Sup. Ct. 68, 33 L. Ed. 302; Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 16 Sup. Ct. 83, 40 L. Ed. 247. A tax is a forced contribution from the citizen towards defraying the expenses of government, and, in order that this burden may be shared generally and proportionately, statutes granting exemption should be construed with great care and caution. It has been recently declared by the court of appeals that "it has never been the general policy of the state to wholly exempt the property, either real or personal, of incorporated churches, colleges, or charitable institutions." Catlin v. Trustees, 113 N. Y. 133–141, 20 N. E. 864, 3 L. R. A. 206. And while it may be said that the relator is connected with Hamilton College, and that its chapter house is in a certain sense an adjunct thereto, yet so far as ownership, occupation, and control are concerned it is entirely independent of the college. Its primary purpose is to afford the members of the fraternity owning it with an abiding place while attending college. It is there that they eat and sleep; it is there that they mingle with each other in social intercourse; it is there that they entertain their friends, and to that end indulge in dancing and other similar amusements. In short, it is to all intents and purposes a club house, a place for rest, recreation, and fraternal intercourse, rather than for the purposes for which it is claimed to have been organized, which purposes are plainly secondary and incidental; and, such being the case, we do not see how, within the well-settled policy of the law to which allusion has just been made, it is entitled to exemption from taxation.

No case arising under precisely the same circumstances has been called to our attention, but there are numerous cases to be found in the reports of this and other states which involve similar considerations, to two or three of which we will now refer. In that of People v. Sayles it appeared that the relator was a corporation organized exclusively for the mental and moral improvement of men and women and for benevolent purposes. Any respectable young man could become a member and enjoy its privileges upon the payment of a nominal membership fee. It owned a building in the city of Albany, of which a portion was used for the purposes of a public library, gymnasium, reading, lecture, and bath rooms, while the remainder consisted of a spacious and elaborately constructed theater or hall, suitable for public meetings, exhibitions, and entertainments. This hall was leased at fixed rates of rental, and used for such purposes only, the income therefrom being devoted exclusively to the maintenance of the library. The court at special term, upon this state of facts, directed that the assessment levied by the assessors upon its real estate should be stricken from the assessment roll. Upon appeal the order was reversed by the appellate division, and the decision of the latter court was subsequently affirmed by the court of appeals. 32 App. Div. 197, 53 N. Y. Supp. 67; Id., 157 N. Y. 677, 51 N. E. 1093. In the case of People v. Sayles, 32 App. Div. 203, 53 N. Y. Supp. 65, a like conclusion was reached upon a very similar state of facts, and the decision of the appellate division was also affirmed by the court of appeals. 157 N. Y.

679, 51 N. E. 1092. The case of People v. Neff, 34 App. Div. 83, 53 N. Y. Supp. 1077, is one where the relator was organized under chapter 94 of the Laws of 1813, entitled "An act to incorporate medical societies for the purpose of regulating the practice of physic and surgery in this state." It maintained a medical library which was open to the public, and furnished rooms for the meeting of medical and charitable societies. Its property, however, was in fact a medical club house, where the members of the medical profession were wont to meet for mental improvement and such incidental benefits as flow from the association and co-operation of effort, and it was held by the appellate division in the Second department that in these circumstances the relator did not bring itself within the exemption clause of the statute. Under the Connecticut General Statutes (section 3820) exempting from taxation "buildings belonging to and used exclusively for ecclesiastical societies," it was held that a country house of three colleges of the Society of Jesus, to which the college professors were accustomed to go for vacation and rest, and while there to engage in certain prescribed religious exercises, and which, when they were absent, was used as a retreat for priests and laymen who desired seclusion and the direction of the members of the society, was not exempt. The court, after reciting the foregoing facts, expressed its conclusion in the following words:

"Thus it seems to be a place of resort for a certain privileged class in the usual vacation periods, for purposes of rest and recreation. Although the persons resorting thither enjoy certain religious privileges, and are subjected to certain rules and regulations of an ecclesiastical nature, yet the organizations, the people who control them, and the people who are affected by them, bear very little resemblance to ecclesiastical societies as they exist and are understood in this state and by the people connected with them. * * * The property in question is used rather for the temporal wants of the members of the Society of Jesus than for instructing and educating young men for the priesthood. It resembles club houses, in that it is designed chiefly for the recreation of its members. Therefore we say that the property is not used exclusively for the purposes contemplated by the statute." Manresa Institute v. Town of Norwalk, 61 Conn. 228, 23 Atl. 1088.

Under a statute of the state of Oregon which provided that "property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated," shall be exempt from taxation (Hill's Ann. Laws, § 2732, subd. 3), it was held that a society providing relief for its indigent members only was a charitable institution, and as such would be entitled to exemption, but that property owned by it, and used for revenue, and not actually occupied by the society, would not be entitled to such exemption. Society v. Kelly (Or.) 42 Pac. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769. In the case of Congregation Kol Israel Anschi Poland v. Mayor, etc., of City of New York, 52 Hun, 507, 5 N. Y. Supp. 608, it was held that the building of which the principal story was used as a synagogue, while the lower story contained the living rooms of the janitor of the synagogue, and bath tubs and plunging pools for men and women, which were accessible for a pecuniary consideration payable to the janitor, in lieu of salary, to all Jews, whether

worshipers at that synagogue or not, was not exempt from taxation, for the reason that the building was not "exclusively used for one or more of the purposes" specified in the statute. We think that the principle enunciated in the foregoing cases, when applied to the case under consideration, requires that the order and judgment appealed from should be reversed.

Order and judgment reversed, with costs, and writ of certiorari quashed. All concur.