ROLLIN BROWNE et al., Constituting the State Tax Commission, Plaintiffs, v. CASE, POMEROY & COMPANY, INC., et al., Defendants.

Third Department, March 8, 1944.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Arthur W. Mattson, Assistant,* and *Marvin P. Lazarus, Deputy Assistant Attorneys-General,* of counsel), for plaintiffs.

*Saxe, Cole & Anderson (Seth T. Cole, Raymond B. Goodell, Martin Saxe, Roger H. Anderson* and *Lloyd D. Keigwin* of counsel), for defendants.

Brewster, J. The submission presents this question: Under section 270 of the Tax Law, as it was in 1935, did a stock transfer tax accrue upon the transaction conducted by and between the defendants with reference to the corporate defendant's acquisition of certain shares of corporate stock as recited in the facts agreed to. These disclose: On July 11, 1935, Case, Pomeroy & Company, Inc. (hereinafter called the corporate defendant), engaged itself to buy for its own account 1000 shares of the common stock of Texas Pacific Coal & Oil Company, a foreign corporation. The purchase was consummated the next day by delivery of the requisite stock certificates and payment made. When delivered the certificates were "endorsed in blank," the title holder having executed their assignments by leaving the name of the assignee in blank. Upon receipt of them the corporate defendant inserted the name of the defendant John C. Gunthert, one of its employees, as assignee in the executed assignments, and then sent the certificates to the appropriate transfer agent for their transfer into the name of said assignee. This was accomplished and on July 15, 1935, new certificates for said stock were received by the corporate defendant. Thereupon defendant Gunthert duly executed a previously prepared form of "declaration" the form of which was as follows:

" Declaration

This is to declare that Certificate No.     for     shares of     Stock of the     Company, issued in my name was not purchased with funds belonging to me, and the said Certificate is not my property, either directly or indirectly, but is subject to the control of Case, Pomeroy & Company, Inc. and has been assigned and delivered to it prior to the execution of this Declaration.

I further declare that I never have had, and do not now have any personal or beneficial interest in said stock, and that the dividends thereon, or the rights in respect thereof, if any, as well as any proceeds arising from the sale thereof, do not in any manner belong to me, but are subject to the order and control of said Company.

Witness My Hand and Seal This —— day of          ,
19 .

..................(L.S.)

Signed in the presence of
..........................."

The stipulated facts recite that when the new certificates were so received and noted upon its blotter, the corporate defendant

" then immediately obtained from the said nominee [defendant Gunthert] his signature upon said declaration and also upon the form of assignment on the back of each certificate so that the said certificates could be delivered by Case, Pomeroy & Company, Inc. to any purchaser or transferee from Case, Pomeroy & Company, Inc. in a form not open to objection, * * * and no stock transfer tax was paid because of the aforesaid acts of said John C. Gunthert." After Gunthert had officiated as last stated the corporate defendant continued to hold the certificates in its exclusive custody until it parted with them by a sale on September 30, 1935. When the corporate defendant first received the stock certificates upon its initial purchase it had in its possession a supply of blank forms of a " stock power " previously signed by said Gunthert but it does not appear that they were ever filled out or otherwise actually used with reference to the transaction in question. These forms of stock powers recited a bargain, sale, assignment and transfer of shares of stock with blanks left for identifying description, and also carried a form for the appointment of an irrevocable power of attorney. It seems that this supply of forms was kept on hand for use in the possible event the nominee did not for any cause execute the " declaration and assignment " after the transfer had been made to him on the books of the company. It is stipulated in substance that at no time did said Gunthert ever have any beneficial interest or rights whatsoever in the shares of stock referred to; that his participation in the transaction aforesaid was in accordance with a pre-existing arrangement and was routine in a method and practice in common use whereby the sale and delivery of such property were facilitated in dispatch and convenience. The fact is likewise presented that the transfer taxes which accrued (1) upon the corporate defendant's purchase of said stock and its said transfer into Gunthert's name and (2) upon its later sale and transfer by the said corporate defendant, were duly paid. The controversy is as to whether another transfer tax accrued when, on July 15, 1935, Gunthert executed the declaration aforesaid and indorsed the assignments of the certificates in blank, and after he had been thus clothed with the appearance of title by the transfer of the certificates for the stock into his name on the books of the company and new certificates had been issued in his name. Upon the purchase and delivery of the stock to Case, Pomeroy & Company, Inc., and its assignment to Gunthert with resulting transfer of title on the books of the corporation, but one transfer tax was paid, but no contro-

versy exists as to whether this involved two transfers, viz: one by the delivery to the purchaser and another by the purchaser's assignment to Gunthert.

In 1935 section 270 of the Tax Law imposed a tax upon the following so far as here material, viz: " * * * *on all sales, or agreements to sell* * * *and all deliveries or transfers of shares or certificates of stock* * * *in any* * * *corporation* * * *whether made upon or shown by the books of the* * * *corporation* * * *or by any assignment in blank, or by any delivery,* * * *whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock* * * *or merely with the possession or use thereof for any purpose.* * * *."*

Defendants contend that Gunthert's participation in the transaction aforesaid resulted in no sale, delivery or transfer within the meaning and intent of said statute, that as an employee of the purchaser of the stock he was only its nominee, " dummy " or *alter ego* and acted as such in a mere matter of routine for purpose of convenience in pursuance of a common custom and practice; that, the purchaser of the stock having fortified itself by the possession of the previously executed stock powers, there was never a moment when Gunthert had power or dominion, much less interest or right to the stock which was placed in his name; that as to him his conduct in the matter was only nominal and mechanical-like in an established plan designed to aid the owner of the stock in preparation for its sale. Defendants, in substance, contend that Gunthert's written disavowal of any interest in the stock and his indorsement of the certificates in blank was a vacuity as regards any transfer of the stock or its certificates which, from the time of purchase to the time when sold, had but the one owner, Case, Pomeroy & Company, Inc.; that since Gunthert had no interest in the stock nothing was or could be transferred by his act which in effect was only the act of the owner.

We are bound to recognize the broad coverage of the statute which imposed the tax. It accrued under *all transfers of shares or certificates of stock whether shown on the books of the corporation, or by an assignment in blank, whether intermediate or final and whether investing the holder with the beneficial interest or legal title.* Defendants cite authorities for the strict construction of a taxing statute. These, however, must be considered somewhat in the light of the other rule that insofar as the statutory language is to be construed as exempting some-

thing from the tax it imposes, the rule of strict construction is reversed. (*People ex rel. D. K. E. Society* v. *Lawler,* 74 App. Div. 553, affd. 179 N. Y. 535.)

On July 15, 1935, Gunthert was clothed with the indicia of legal title to the stock. It was in no sense a full and complete title. It vested in him no beneficial interest in the shares of stock represented or designated by the certificates which stood in his name, and no such interest, nor the shares themselves, were transferred by his act in assignment. (*U. S. Radiator Corp.* v. *State of New York,* 208 N. Y. 144.) However, such title as he had was not an evanescent one. To extinguish or transfer it something was necessary to be done and this required positive action. Gunthert as an individual entity separate and apart from that of the corporate owner had it in his power to perform such act. He did so. He thereby divested himself of the naked legal title, the " appearance of title," which he had, and this he transferred to the true owner and holder. The statute imposed the tax upon " transfers of * * * certificates " as well as upon the " transfers of shares " of corporate stock. It imposes the tax upon the transfer of certificates when accomplished by " any assignment in blank." By such assignment Gunthert effectively transferred the title to the stock which was recorded in his name on the face of the certificates. That his act in so doing invested the holder with no beneficial interest in the shares of stock or even in the certificates which evidenced their ownership, this the statute said did not matter. In my opinion the transaction in question constituted a taxable transfer of certificates of stock within the language and meaning of the statute. (*Travis* v. *Ann Arbor Co.,* 180 App. Div. 799, affd. 227 N. Y. 640.) The case last cited seems clear authority for the above holding. The fact that in the *Travis* case (*supra*) the " accommodation holder's " or nominee's blank assignment of the stock certificate was an isolated transaction instead of one in common practice and differently served the convenience of the true owner, these distinctions I consider of no moment.

The tax-imposing statute (Tax Law, § 270) originated in 1905 as section 315 of the General Tax Law. (L. 1905, ch. 241, § 1.) During the next thirty-seven years it was amended fourteen times. (L. 1906, ch. 414, § 1; L. 1910, ch. 38, § 1; L. 1911, ch. 352, § 1; L. 1912, ch. 292, § 1; L. 1913, ch. 779, § 1; L. 1922, ch. 354, § 2; L. 1927, ch. 403, § 1; L. 1928, ch. 740, § 1; L. 1930, ch. 190, § 1; L. 1933, chs. 454, § 1, 455, § 1, 472, § 1, 643, § 2; L. 1935, ch. 749, § 1; L. 1942, chs. 481, § 1, 482, § 1, 487, § 1, 931, § 1; L. 1943, ch. 83, § 1, eff. March 6, 1943; L. 1943, ch. 489, § 1, eff.

April 14, 1943.) Only two years ago and by Laws of 1942, chapter 482, did there come an amendment [Tax Law, § 270, now subd. 5, par. (h)] which exempted from tax a transfer such as the one in question. This legislative history is strongly indicative that prior to the 1942 amendment it was the legislative intention that the statute would subject the transaction in quesion to the tax it imposed. (*People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574, 592; *Matter of Miller*, 110 N. Y. 216, 222; *Founders General Corp.* v. *Hoey*, 300 U. S. 268, 275.)

Judgment should be ordered in favor of the plaintiffs and against defendants for the amount of the tax sued for, viz: thirty dollars.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Judgment ordered in favor of the plaintiffs and against defendants for the amount of the tax sued for, viz: thirty dollars, without costs. [See *post,* p. 1007.]