■ In the Matter of CORNELL UNIVERSITY, Appellant, v. BOARD OF ASSESSORS OF THE CITY OF ITHACA, Respondent. (And Four Other Proceedings.) — *Per Curiam.* Appeal from a judgment of the Supreme Court which dismissed, after joint trial before a Referee, the petitions in proceedings to review real property assessments for the years 1957, 1959 and 1960, with the result of sustaining the denials by respondent Board of Assessors of petitioner University's applications for revision of the assessments by designating the assessed properties exempt as "real property of a corporation * * * organized exclusively for * * * educational * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or by another such corporation" (Tax Law, § 4, subd. 6, now Real Property Tax Law, § 420). Concededly, petitioner was organized exclusively for educational purposes; concededly, it owns the assessed realty; and the issue is simply whether the properties, which are occupied by fraternities under an arrangement with the University, are "*used exclusively* for carrying out thereupon" an educational purpose; it being conceded, further, that none of the fraternities is an exempt organization so as to fall within the category "another such corporation". Lease agreements were made by the fraternities concerned and their alumni organizations with the University, pursuant to the latter's so-called Group Housing Plan, purposed to expand "inadequate" student dormitory facilities and to afford "the educational and social advantages associated with group living"; and providing, upon the approved application of each organized group of 25 or more students, for the construction by the University of a house for occupancy by such group; the costs of construction, or in some cases renovation of an existing structure, being met by gifts from graduate members of the particular group. Under the respective

leases, rental payable to the University includes the cost to the University of utility services, repairs, insurance, maintenance of the grounds and taxes "that may properly be assessed against the property." Each lessee group elects the members thereof and they, of course, become those who shall occupy the house. If there is vacant space, the University may assign it to other students, who may not, however, enjoy the privileges of membership in the fraternity concerned; but, in practice, no such assignment has ever been made although vacancies have at times existed in all of the houses. We find nothing in this record or in the more recent case law cited by appellant (see, e.g., *People ex rel. Watchtower Bible & Tract Soc.* v. *Haring,* 8 N Y 2d 350, mot. for rearg. den. 9 N Y 2d 688; *Matter of Pace Coll.* v. *Boyland,* 4 N Y 2d 528) to differentiate these proceedings from others in which exemption has been denied realty used and occupied by college fraternities of this nature (see, e.g., *People ex rel. D. K. E. Soc.* v. *Lawler,* 74 App. Div. 553, affd. 179 N. Y. 535; *People ex rel. Cornell Univ.* v. *Thorne,* 184 Misc. 630). It is true, of course, that the fraternities perform the essential functions of housing and feeding students but it is clear that, in each case, the use of the premises is also devoted, in substantial part, to the social and other personal objectives of a privately organized, self-perpetuating club, controlled by graduate as well as student members. The burden of demonstrating these objectives to be educational purposes was not sustained and thus Special Term properly found that the premises were not used "exclusively" for educational purposes, within the intendment of the exemption statute. Judgment affirmed, without costs. Gibson, P. J., Herlihy, Taylor, Aulisi and Hamm, JJ., concur.