THE PINGRY CORPORATION, COMPLAINANT-APPELLANT, v. TOWNSHIP OF HILLSIDE, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

———

THE TOWNSHIP OF HILLSIDE, COMPLAINANT-RESPONDENT, v. THE PINGRY CORPORATION, RESPONDENT-APPELLANT, AND DIVISION OF TAX APPEALS OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued November 9, 1965—Decided March 7, 1966.

458

*Mr. Nicholas Conover English* argued the cause for appellant (*Messrs. McCarter & English,* attorneys; *Mr. English,* of counsel and on the brief).

*Mr. A. Howard Finkel,* of counsel, argued the cause for respondent Township of Hillside.

*Mr. Alan B. Handler,* First Assistant Attorney General, filed a statement in lieu of brief on behalf of respondent, Division of Tax Appeals (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

SCHETTINO, J. The Pingry Corporation, a non-profit educational institution incorporated pursuant to *N. J. S. A.* 15:1–12 *et seq.,* appeals from a decision of the Appellate Division (86 *N. J. Super.* 437 (1965)) affirming in part and reversing in part certain tax assessments made by the Township of Hillside upon buildings and lands used by Pingry in

its operation of a day school for boys, grades 4 to 12. We granted certification on Pingry's petition. 45 *N. J.* 33 (1965).

The Pingry School has been in existence for over 100 years. In 1953 the Board of Trustees of the school authorized a move of the school from Elizabeth to Hillside. In 1962, Hillside presented Pingry with tax bills, assessing all of the school's property for taxation. Pingry appealed the assessments to the Union County Board of Taxation, which set aside the assessments upon the school building, certain personal property and seven faculty houses but retained the assessments upon other lots including those upon which the faculty houses were located.

Hillside appealed to the State Division of Tax Appeals and Pingry cross-appealed. The Division affirmed the County's cancellation of assessments upon the school building, equipment shed, recreation facilities, personal property and the residence of the janitor. It also affirmed the assessment of the lots upon which the faculty houses are situated but reversed the cancellation of the assessments on the houses themselves, and reinstated them.

Pingry initiated separate appeals upon the judgments entered by the Division respecting the assessments upon the faculty houses and the land upon which they are built. These appeals were consolidated in the Appellate Division which affirmed the judgments of the Division of Tax Appeals. On the appeal before us, Pingry questions the validity of the assessments placed upon the seven faculty houses and the lots upon which they are situated. These residences are located at the westerly end of the school campus in an enclave. The total acreage of the campus comprises 31.75 acres with the faculty house area (Master's Square) encompassing 2.82 acres.

As stated in the recent case of *State v. Vaughn,* 44 *N. J.* 142, 145 (1965), this State holds the education of children to be of supreme importance. The *New Jersey Constitution* (1947) *Art.* VIII, *sec.* IV, *par.* 1 provides:

"The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years."

Thus it is clear that the State's duty to educate children is a matter of constitutional demand. In *Title* 18, *N. J. S. A.* 18:14–1 *et seq.,* the Legislature has implemented this demand by providing for the public education of every child within the State. By *N. J. S. A.* 18:14–14, the parent, guardian or other person having custody of every child is required to see to it that every child between the ages of 7 and 16 attends "the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments * * *."

Pingry claims exemptions for the faculty houses under *N. J. S. A.* 54:4–3.6 which, prior to amendment *L.* 1964, *c.* 42, *sec.* 1, provided in pertinent part:

"The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair use and enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; * * * provided * * * the buildings, or the land on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit * * *. (*L.* 1941, *c.* 243, *p.* 66, *sec.* 1)."

As a non-profit educational corporation, Pingry contends that the faculty residences and the land upon which they are built are "buildings actually used for * * * schools." To this contention Hillside argues that the statute should not be read as allowing such exemption. Hillside contends that the fundamental approach of real property taxation is that all property must bear its just and equitable share of the burden of taxation and that a tax exemption, being a departure from such approach, requires a strict construction. *Princeton University Press v. Princeton,* 35 *N. J.* 209, 214 (1961); *Town-*

*ship of Teaneck v. Lutheran Bible Institute,* 20 *N. J.* 86, 90 (1955) ; *Trenton v. State Bd. of Tax Appeals,* 127 *N. J. L.* 105, 106 (*Sup. Ct.* 1941), affirmed *sub nom. Trenton v. Rider College,* 128 *N. J. L.* 320 (*E. & A.* 1942).

 The original tax exemption statute exempted "all colleges, academies, or seminaries of learning." *L.* 1851, *p.* 272. In 1903 the statutory language was amended to read "all buildings *actually and exclusively* used for colleges, schools, academies and seminaries of learning * * *." *L.* 1903, *c.* 208, *p.* 395. Finally, in 1913 the word "exclusively" was deleted, *L.* 1913, *c.* 278, *p.* 570, and with amendment as recent as 1964 the language has remained the same. The deletion of the more restrictive term "exclusively" would indicate that the Legislature intended to broaden the exemption. This conclusion is strongly indicated by the variant language used within the section itself:

"The following property shall be exempt from taxation under this chapter: All buildings *actually used* for colleges, schools, academies or seminaries; all buildings *actually used* for historical societies, associations or exhibitions, when owned by the State, county or any political subdivision thereof; all buildings *actually and exclusively* used for public libraries, religious worship or asylum or schools for feeble-minded or idiotic persons and children; all buildings *used exclusively* by any association or corporation formed for the purpose and actually engaged in the work of preventing cruelty to animals; all buildings *actually and exclusively used and owned by* volunteer first-aid squads, which squads are or shall be incorporated as associations not for pecuniary profit; all buildings *actually and exclusively used* in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious, charitable or hospital purposes, or for one or more such purposes; all buildings owned or held by an association or corporation created for the purpose of holding the title to such building as are *actually and exclusively used* in the work of 2 or more associations or corporations organized exclusively for the moral and mental improvement of men, women and children; all buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes and *actually and exclusively used* in the work of one or more associations or corporations organized exclusively for charitable or religious purposes, which associations or corporations may or may not pay rent for the use of the premises or the portions of the premises used by them; the buildings, not exceeding 2, *actually occupied* as a parsonage by the officiating clergymen of any religious corporation of

this State, together with the accessory buildings located on the same premises; * * *. As amended *L*. 1962, *c*. 154, *sec*. 1; *L*. 1964, *c*. 42, *sec*. 1." (Emphasis added)

See, *Princeton University Press v. Princeton, supra.*

█ The question then becomes: Are buildings and the lands upon which they are built and used to house the headmaster and the faculty at a country day school, exempt from taxation under *N. J. S. A.* 54:4–3.6, *i.e.,* are they "actually used" for school purposes? A review of the cases which have passed upon this and analogous issues leads us to the conclusion that they are. A finding as to exemption or not has been based upon an investigation of a number of factors including the following: absence of a profit-making arrangement in the rental contract; desirability of providing available housing at or near the school and whether the provision of housing for its faculty is reasonably designed to further the educational purposes of the school.

█ Where the institution by its rental agreements with its faculty members assumes the role of an ordinary landlord and profits, the purpose to which the buildings are put can be said to only indirectly further the goals of the school and thus the finding of "actual use" cannot be found. However, where, as here, the landlord-tenant relationship is secondary to the primary purpose of providing the housing for the faculty on the campus site and no profit is possible, an exemption can be justified. See *City of Hoboken v. Division of Tax Appeals, Dept. of Finance,* 134 *N. J. L.* 594 (*Sup. Ct.* 1946), modified on other grounds 136 *N. J. L.* 328 (*E. & A.* 1947); *Princeton v. State Board Taxes,* 96 *N. J. L.* 334 (*Sup. Ct.* 1921); *Concordia College Corporation v. State,* 265 *Minn.* 136, 120 *N. W. 2d.* 601 (*Sup. Ct.* 1963); *Doane College v. County of Saline,* 173 *Neb.* 8, 112 *N. W. 2d.* 248 (*Sup. Ct.* 1961); *Trustees-Phillips Academy v. Inhabitants of Andover,* 175 *Mass.* 118, 55 *N. E.* 841 (*Sup. Jud. Ct.* 1900). In *City of Hoboken v. Division of Tax Appeals, supra,* 136 *N. J. L.* 328, tax exemptions were claimed for faculty residences at Stevens Institute which were rented from $50 to

$175 per month. The Court held that an exemption for these buildings could be granted only upon a showing that the rental income returned no profit to the institution claiming the exemption.

The record here amply supports the conclusion that Pingry was not renting the buildings for profit. Tenancy was granted by oral lease to the teachers at the rate of $60 per month for a single family house, $72 per month for the headmaster's house and $15 per month for the bachelors' quarters, rates far lower than those in the surrounding area. The record further shows that this income was insufficient to offset Pingry's maintenance costs let alone an allowance for depreciation. The breakdown of Pingry's rental income and expenses indicates that it operated these faculty residences at a $2800 loss from September 1958 to September 1961 and for the tax year in question, 1962, at a loss of $3600.

Although not strictly relevant, there is much authority holding that where the occupancy of a member of the faculty or, more particularly, the administrative head of an educational institution is required to be on or nearby the institution's campus for faculty meetings, conferences and the necessary social engagements adjunct to academic life, the residence will be held to be tax exempt. *City of Hoboken v. Division of Tax Appeals, supra; Rutgers College v. Piscataway Twp.*, 20 *N. J. Misc.* 127, 25 *A. 2d.* 248 (State Board of Tax Appeals), affirmed *sub nom, Piscataway Twp. v. State Bd. of Tax Appeals,* 129 *N. J. L.* 261 (*Sup. Ct.* 1942), affirmed 131 *N. J. L.* 158 (*E. & A.* 1944) ; *Princeton Twp. v. Institute for Advanced Study,* 59 *N. J. Super.* 46 (*App. Div.* 1960) ; see *Appeal of the University of Pittsburgh,* 407 *Pa.* 416, 180 *A. 2d.* 760 (*Sup. Ct.* 1962) ; *Doane College v. County of Saline, supra; Ramsey County v. Macalester College,* 51 *Minn.* 437, 53 *N. W.* 704, 18 *L. R. A.* 278 (*Sup. Ct.* 1892).

Pingry and Hillside stipulated, "the availability of faculty housing has facilitated obtaining and retaining competent

faculty members." The decision made by the Trustees of Pingry to provide faculty houses cannot be said to be unreasonable. Pingry decided to set up private residences so that it could offer the desired personnel low rent residences near the school, as an attractive inducement to obtain their affiliation. The former headmaster of Pingry, who held that position at the time when the plan went into effect, stated that it was his opinion that an enclave of faculty houses on campus contributes to the efficiency and effectiveness of the teachers.

■ We are satisfied from a review of the record in light of the construction to be placed upon the statute that the faculty houses and the land upon which they are situated should be tax-exempt.

Finally, as to Pingry's land that is tax-exempt, Hillside contends that the exemption extends to a maximum total of five acres. We find no merit in this contention. As stated above, the enclave of houses used for faculty residences amounted to 2.82 acres and testimony before the Division of Tax Appeals indicates that the area around each house contains the normal extent of yard and side land customary to houses of similar proportion.

■ As indicated above, the original exemption statute (*L.* 1851, *p.* 272) exempted *in toto* all buildings and lands used by colleges, academies and seminaries of learning. This act was amended in 1903, (*L.* 1903, *c.* 208, *p.* 395) to provide, in respect to the land upon which exempt buildings are erected, that an exemption would be granted for:

"* * * the land whereon the same are situated necessary to the fair use and enjoyment thereof, not exceeding five acres in extent for each, * * *."

This section was interpreted in *Institute of Holy Angels v. Bender,* 79 *N. J. L.* 34, 36 (*Sup. Ct.* 1909), to mean that lands, whereon there are tax-exempt buildings, are themselves exempt to the extent "necessary to the fair use and enjoyment thereof, not exceeding five acres for each."

In the 1918 revision of the exemption statute the words "for each" were deleted, *L.* 1918, *c.* 236, *sec.* 203, *p.* 848, and the language in the statute has remained the same through the tax year in question here.[1]

No cases have been found which interpret the meaning of *N. J. S. A.* 54:4–3.6 subsequent to the 1918 revision.[2] The administrative practice pursuant to the statute has been consistent with the holding of *Institute of Holy Angels v. Bender, supra.* The current *Assessors' Law Manual,* Local Tax Bureau, Division of Taxation (August 1954), *p.* 24, clearly indicates that the assessor is to examine the land to determine what amount of acreage is "necessary to the fair enjoyment of the subject building" but that in any event no land in excess of five acres for each building should be exempted.

> "The full five acres should not be exempted unless necessary to the fair enjoyment of the subject building. It may be possible to have three buildings for which only one acre of ground would be exempt; *in other instances, because of the use of the buildings, the full five acres may be necessary for each building.* These are points for careful examination and realistic consideration of all the facts before reaching a decision." (Emphasis added)

This practice, then, illuminates the possible obscurity of the 1918 revision. See, *State v. LeVien,* 44 *N. J.* 323, 330 (1965); *In re Borough of Glen Rock,* 25 *N. J.* 241, 246 (1957); *Lane v. Holderman,* 23 *N. J.* 304, 322 (1957).

█ It cannot be said that the land whereon these exempt faculty houses are erected is not exempt, for, the 2.82 total

---

[1] Although not applicable to the tax year in question, the section as amended by *L.* 1964, *c.* 42, *sec.* 1 (deleting the words "use and") now reads:

"* * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; * * *."

[2] But see, *Usher's Tax Series—Assessors' Manual* (1918), *p.* 11 interpreting the revised act as allowing an exemption to the land, whereon an exempt building is erected, to the five acres extent for each building.

acres for seven houses with the normal yard proportions is "necessary for the fair use and enjoyment" of the buildings.
Reversed; no costs.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.