SIGMA PHI EPSILON, PLAINTIFF, v. CITY OF
HOBOKEN, DEFENDANT.

MU ALUMNI ASSOCIATION, PLAINTIFF, v. CITY OF
HOBOKEN, DEFENDANT.

PHI SIGMA KAPPA, PLAINTIFF, v. CITY OF
HOBOKEN, DEFENDANT.

SIGMA CHAPTER HOUSE, PLAINTIFF, v. CITY OF
HOBOKEN, DEFENDANT.

ALPHA XI ALUMNI ASSOCIATION, PLAINTIFF, v. CITY OF
HOBOKEN, DEFENDANT.

Tax Court of New Jersey

November 12, 1980.

*John J. Hanlon, Jr.* for plaintiffs (*Milton, Keane & Brady*, attorneys).

*Herbert H. Fine* for defendant.

CRABTREE, J. T. C.

These are local property tax cases wherein plaintiffs, Greek–letter social fraternities, claim tax exemption for the years 1973 through 1975 and 1977 through 1979 [1] with respect to their properties located on the campus of Stevens Institute of Technology in Hoboken. The Hudson County Board of Taxation upheld the assessments for all properties for all years.

[1] No petitions were filed by Mu Alumni Association and Phi Sigma Kappa for 1973. No complaint was filed by Alpha Xi Alumni for 1979.

Each plaintiff claims exemption pursuant to *N.J.S.A.* 54:4–3.-26 on the ground that its property is used in the work and for the purpose of a fraternity organized and operated in substantial part for educational and charitable purposes.

The cases were partially tried before a judge of the Division of Tax Appeals but no decisions were rendered prior to the creation of this Court, to which the cases were transferred for completion of trial and decision. *N.J.S.A.* 2A:3A–26; *R.* 1:12–3.

Plaintiffs did not introduce evidence with respect to each plaintiff separately but the parties stipulated that the evidence actually introduced, both testimonial and documentary, applied to all the plaintiffs.

Each fraternity provides living accommodations for 23 to 35 male students attending Stevens Institute of Technology (Stevens). Fraternity members only are permitted to reside in the subject properties and membership is by invitation only. Active members vote on the selection of pledges[2] from among the freshman class and upon the admission of pledges to active (permanent) membership. In theory, rejection of students, either as pledge candidates or as pledges seeking active member status, can occur. Each fraternity is primarily social in nature, offering sleeping and eating accommodations in an atmosphere of fellowship for its resident members, as well as respite and diversion from the rigorous academic demands of the Stevens curriculum.

All the plaintiffs offer tutoring assistance on a non–programmatic, irregular basis to all Stevens freshmen. The tutoring is not the equivalent of a systematic, organized program of instruction. Rather, it takes the form of *ad hoc* "crib" sessions conducted on the eve of examinations in particular academic courses by fraternity members professing some superior grasp of the subject matter. The frequency and occurrence of the tutor-

---

[2]Pledges are provisional members under scrutiny until such time, usually in the spring, as the active members are satisfied that they should be admitted to full membership.

ing sessions depends on the needs of individual students and the freshman schedule of courses.

The national organizations of the plaintiffs and the Stevens Chapter of the Interfraternity Council (IFC) make annual awards for scholastic achievement to plaintiffs' members. Monetary scholarships and loans are also available to qualified members through the respective national organizations of the plaintiffs.

The members of each fraternity participate in annual charitable activities such as Muscular Dystrophy fund raising, contributions to the Stevens blood bank, an IFC–sponsored basketball camp for Hoboken children, and a Christmas party for orphans.

The Certificate of Incorporation of Sigma Phi Epsilon, stipulated by the parties to be representative of the corporate charters of all the plaintiffs, does not include education among the organization's purposes. The stated purposes are to establish and maintain a fraternity house for the use and comfort of members and to foster literary, social and fraternal intercourse among those members.

The statute governing tax exemption of fraternal organizations is *N.J.S.A.* 54:4–3.26, which provides, in pertinent part:

All real and personal property used in the work and for the purposes of one or more fraternal organizations ... shall be exempt from taxation ... if the legal or beneficial ownership of such property is in one or more of said organizations ... and no part of such property is used for pecuniary profit, provided that each such organization ... is also organized and operated in substantial part for charitable or educational purposes ...

The critical inquiry in these cases is whether the plaintiffs were organized and operated in substantial part for charitable or educational purposes within the meaning of the statute. The pursuit of that inquiry is conducted within the stringent confines of the salutary principles governing tax exemption, namely, that all property must bear a just and equal share of the public burden of taxation, and statutes granting exemption are most strongly construed against exemption claimants. *Princeton University Press v. Princeton*, 35 *N.J.* 209, 172 *A.*2d 420 (1961); *Bloomfield v. Academy of Medicine of New Jersey*, 47 *N.J.* 358, 214 *A.*2d 707 (1966).

The exemption claim of each plaintiff appears primarily based on the allegation that it is operated in substantial part for educational purposes. The phrase "operated for educational purposes" means the direct, immediate and substantial use or operation embracing systematic instruction in any and all branches of learning. *NRA Special Contribution Fund v. Board of County Commissioners,* 92 *N.M.* 541, 591 *P.2d* 672 (Court of Appeals 1978), cert. denied 92 *N.M.* 464, 589 *P.2d* 1055 (Sup.Ct. 1979). The alleged educational activities conducted by the plaintiffs did not rise to the level of programmatic regularity implicitly required by the statute. They were occasional, spasmodic and clearly incidental and subordinate to the primary purposes of providing living accommodations and a congenial social environment for their members. As the New York court said in *People ex rel. D.K.E. Society v. Lawler,* 74 *App.Div.* 553, 77 *N.Y.S.* 840 (App.Div.1902), aff'd 179 *N.Y.* 535, 71 *N.E.* 1136 (1904):

> ... And while it may be said that the relator is connected with Hamilton College, and that its chapter house is in a certain sense an adjunct thereto, yet so far as ownership, occupation and control are concerned it is entirely independent of the college. Its primary purpose is to afford the members of the fraternity owning it with an abiding place while attending college. It is there that they eat and sleep; it is there that they mingle with each other in social intercourse; it is there that they entertain their friends, and to that end indulge in dancing and other similar amusements. In short, it is to all intents and purposes a club house, a place for rest, recreation, and fraternal intercourse, rather than for the purposes for which it is claimed to have been organized, which purposes are plainly secondary and incidental; and such being the case, we do not see how, within the well–settled policy of the law to which allusion has just been made, [strict construction of exemption statutes] it is entitled to exemption from taxation.

(77 *N.Y.S.* at 843)

The claim for exemption on the basis of plaintiffs' participation in charitable projects is even less tenable. Plaintiffs' involvement in charitable affairs is no greater than that of any public spirited individual or business; and the regularity and extent thereof do not warrant a finding that plaintiffs were operated in substantial part for charitable purposes.

Plaintiffs' corporate charters fail to indicate that they were organized for educational or charitable purposes. Indeed, they

indicate affirmatively that plaintiffs were organized for essentially social purposes.

Nothing in the record differentiates these plaintiffs from college fraternities everywhere. The general rule recognized by the courts is that fraternities are not entitled to tax exemption because they exist primarily for the convenience of their members and are mainly concerned with providing them with board, lodging and recreation, while any educational or charitable purposes are of secondary importance. *Iota Benefit Ass'n v. County of Douglas*, 165 *Neb.* 330, 85 *N.W.*2d 726 (Sup.Ct.1957); *Anno.* : "Exemption from taxation of college fraternity or sorority house", 66 A.L.R. 2d 904 (1959).

In view of the foregoing, I find that none of the plaintiffs was organized or operated for educational or charitable purposes. The Clerk of the Tax Court is directed to enter judgments in accordance with this opinion.