ANDREW, J.T.C.
This is a local property tax appeal involving a claim of exemption from taxation by plaintiff, Nu Beta Alumni Association of Phi Gamma Delta (Nu Beta), under N.J.S.A. 54:4-3.6 (§ 3.6) and N.J.S.A. 54:4-3.26 (§ 3.26) for tax years 1981, 1982 and 1983. The subject property, which houses Rutgers University undergraduate students, is a residential dwelling situated in the taxing district of the City of New Brunswick (New Brunswick).
The property was assessed for 1981, 1982 and 1983 as follows:
1981 and 1982
Block 56 Lots 4 & 5 Block 56 Lot 1
Land $8,200 $ 32,600
Improvements _AU 73,100
Total $8,200 $105,700
1983
Block 56 Lots 4 & 5 Block 56 Lot 1
Land $9,800 $ 32,600
Improvements -0-78,400
Total $9,800 $111,000
These assessments were affirmed by the Middlesex County Board of Taxation. Plaintiff did not challenge the amount of the assessments. Its only claim was exemption from local property taxation.
The following facts are undisputed by the parties. Plaintiff is a nonprofit corporation organized under Title 15 of the laws of the State of New Jersey. The fraternity house located at Block 56, Lot 1, commonly known as 78 Easton Avenue, New Brunswick, was acquired by plaintiff in June 1949 and the *382 adjoining parking lot situated at Block 56, Lots 4 & 5, commonly known as 147 Hamilton Avenue, New Brunswick, was conveyed to plaintiff in January 1968. The purpose for which these properties were purchased was to provide housing to undergraduate Rutgers University students who choose to associate themselves with the fraternity known as the Nu Beta Chapter of Phi Gamma Delta. Rutgers University does not have an interest in, nor does it lease any portion of, the subject properties.
The occupancy of the fraternity house is generally limited to members of the undergraduate fraternity who are students of Rutgers. Although plaintiff is a nonprofit corporation, it charges fees and rentals to the undergraduate students residing on the property in order to defray maintenance costs. The fraternity can provide living accommodations for 28 Rutgers students. Membership in the Nu Beta Chapter is limited to those students who are extended invitations to join and who succeed in obtaining the approval of a majority of the existing members. Rutgers University does not, nor does it attempt to, exercise any control with regard to the selection of members.
With regard to housing accommodations at the university, the record reveals that Rutgers, at least during the tax years in question, had a need for additional student living space. There was an indication that the residence halls of the university were being utilized in excess of their originally designed capacities. There was also testimony that the fraternity-sorority system did assist somewhat in reducing the overcrowding. However, the university did not exercise any control over assignments of living accommodations in any fraternity or sorority house. While the undergraduate fraternity chapter is self-governing, it is also subject to the university rules and regulations which apply generally to all students, fraternity and nonfraternity alike.
Plaintiff views the undergraduate chapter as a “learning experience” for the student members, particularly in fiscal management, kitchen operation and financial budgeting. Al *383 though they have what is called a “library,” containing some books, old course notes, scrapbooks of fraternal activities and national fraternity publications, there is no tutoring of the undergraduate members in any courses nor are there any regular academic programs for members of the fraternity house.
There are, however, training programs consisting of classes for fraternity pledges (potential members) to school them in the ways of fraternity life. The frequency and occurrence of these classes and the number of pledges and/or members, if any, participating, was neither described nor detailed. There are also occasional training programs conducted by the university for undergraduate fraternity officers at one or more of the fraternity houses on the university campus. Again, the frequency and occurrence of these meetings at the subject property was not shown. As a matter of fact, it was not indicated whether any of these training programs occurred at the subject premises.
Rutgers University recognizes that fraternities and sororities are a benefit to students since they provide an alternative to conventional residence hall accommodations and an opportunity for self-governance and leadership.
The objectives of the fraternity are primarily social in nature. This is reflected in the purposes of plaintiff, as shown in its certificate of incorporation, which are:
to perpetuate the mutual friendship, to promote the best interest of its members in connection with college life, and to provide its members with the convenience of a clubhouse.
Plaintiff’s witness Robert Behot testified that these goals are put into practice through a myriad of activities, including band parties, teas, and faculty open-houses and dinners.
The parties stipulated that the land upon which the fraternity house in question is erected is reasonably necessary for the operation of the building and does not exceed five acres. It was also stipulated that plaintiff is a fraternal organization which is not operated for charitable purposes. Lastly, it was *384 agreed that the property at issue was used in the work, and for the purposes, of plaintiff and is not used for pecuniary profit.
The general rule as to the construction of exemptions in local property tax statutes is that such exceptions are to be strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Princetop Tp. v. Tenacre Foundation, 69 N.J.Super. 559, 563, 174 A.2d 601 (App.Div.1961). Taxation is the rule and exemption is the exception to the rule. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions, etc. v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952). The burden is upon the claimant to clearly bring himself within the exemption provision. Ibid.
This is not to say, however, that a statute is to receive an unreasonable construction. As our Supreme Court has indicated,
... [A] statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law ... The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. [Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956)]
It must be noted, however, that this requirement of “reasonable” construction does not destroy the preference for the taxability of property. Container Ring v. Taxation Div. Director, 1 N.J. Tax 203, 208 (Tax Ct.1980), aff’d o.b. 4 N.J. Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). With these basic tenets in mind we can now turn to the issue at hand.
The parties have narrowed the questions in this proceeding. There are only two issues which must be resolved in order to determine if plaintiff is entitled to a local property tax exemption. These are: (1) whether plaintiffs premises are “actually used for colleges” under § 3.6 and/or (2) whether plaintiffs *385 property is used in the work of a fraternity which is “organized and operated in substantial part for ... educational purposes and demonstrates these aims in its programs and activities” under § 3.26.
I
Section 3.6 provides:
Exemption of property of nonprofit organizations.
The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, ... The land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent....
In order for plaintiffs property to qualify for exemption from local property tax the property must actually be used for college purposes. Pingry Corp. v. Hillside Tp., 46 N.J. 457, 463, 217 A.2d 868 (1966). In Pingry, the Court reversed the denial of a tax exemption for seven houses owned by a school and rented to faculty members, reasoning that:
A finding as to exemption or not has been based upon an investigation of a number of factors including the following: absence of a profit-making arrangement in the rental contract; desirability of providing available housing at or near the school and whether the provision of housing for its faculty is reasonably designed to further the educational purposes of the school. [Id. at 463, 217 A.2d 868; emphasis supplied]
The “educational purposes” element of the Pingry test was further refined in Trust. of Steven Inst., etc. v. Hoboken, 1 N.J. Tax 602 (Tax Ct.1980). In that case the Tax Court found that where access to living accommodations is limited to members of social fraternities and is beyond the control of the educational institution there can be no tax exemption because the property is not used for “educational purposes.” Id. at 606; see Cornell v. Thorne, 184 Misc. 630, 57 N.Y.S.2d 6 (Sup.Ct.1945); Knox College v. Board of Review, 308 Ill. 160, 139 N.E. 56 (Sup.Ct.1923); Cornell University v. Board of Assessors, 24 A.D.2d 526, 260 N.Y.S.2d 197 (App.Div.1965).
Plaintiff contends that the subject property as used by the undergraduate fraternity should enjoy exemption from local property taxation, in light of the fact that demand for student *386 housing at Rutgers exceeds the existing supply and that plaintiff, along with other fraternity and sorority houses, fills a critical need for student housing facilities. This argument was also advanced in Trustees of Stevens Institute and was rejected on the basis that use of the fraternity’s living accommodations was limited to members of the fraternity rather than opened up to all university students.
Plaintiff also contends that fraternity members are afforded an “educational experience” that is not available to students living in college dormitories and therefore, it meets the “used for educational or college purposes” test. The evidence adduced in this matter, especially that put forth by plaintiff’s witness Robert Behot, discloses that the dominant use of the property was for social and fraternal purposes, such as band parties, teas, and faculty open houses and dinners, and that any educational purposes for which it might occasionally be used were merely incidental.
In summary, plaintiff asserts that because its fraternity is heavily regulated by, provides needed housing for, and only allows in students of, Rutgers University, the “actual use” test has been met. As defendant correctly responds, however, the university has no right to assign rooms in, choose members of, or conduct classes at the fraternity, and thus under Trustees of Stevens Institute there can be no tax exemption since the property is not “used for educational purposes” due to limited access and absence of control by the college. Plaintiff has not presented any cogent explanation, nor is this court aware of any persuasive reasons, why the Tax Court’s conclusion in Trustees of Stevens Institute should not apply. Additionally, the fraternity does not, under Pingry, “further the educational purposes” of Rutgers University because its primary purpose is to serve as a “clubhouse” and thus, as defendant observes, it should have no greater right to an exemption than an apartment leased by students.
Therefore, since plaintiff has not met its burden of demonstrating “actual use,” it has failed to prove its entitlement to an *387 exemption under § 3.6 for property “actually used for colleges.”
II
Section 3.26 states:
Exemption of certain property of fraternal organizations.
All real and personal property used in the work and for the purposes of one or more fraternal organizations ... whether incorporated or unincorporated, shall be exempt from taxation under this chapter, if the legal or beneficial ownership of such property is in one or more of said organizations, ... and no part of such property is used for pecuniary profit, provided that each such organization ... is also organized and operated in substantial part for ... educational purposes and demonstrates these aims in its programs and activities. [Emphasis supplied]
Thus, in order to qualify for a § 3.26 exemption, plaintiff must satisfy two requirements: (A) it must be “organized and operated in substantial part for ... educational purposes” and (B) it must “[demonstrate] these aims in its programs and activities.”
The phrase “organized and operated in substantial part for ... educational purposes” was construed, in the context of a college fraternity, by Judge Crabtree in Sigma Phi Epsilon v. Hoboken, 1 N.J. Tax 607 (Tax Ct.1980). He decided that Sigma Phi Epsilon was not “organized” for educational purposes because its corporation charter, which stated that the purposes of the fraternity were “to establish and maintain a fraternity house for the use and comfort of members and to foster literary, social, and fraternal intercourse among those members,” clearly indicated that it was organized for essentially social purposes. Id. at 610-612. The Tax Court also determined that Sigma Phi Epsilon was not “operated” for educational purposes since its tutoring assistance program was “occasional, spasmodic and clearly incidental and subordinate to the primary purposes of providing living accommodations and a congenial social environment for their members” and thus did not rise to the level of the “direct, immediate and substantial use or operation embracing systematic instruction in any and all branches of learning” implicitly required by the statute. Id. at 611. Therefore, the court concluded the fraternity was not *388 entitled to a § 3.26 exemption since it was neither “organized” nor “operated” for educational purposes, and noted that:
Nothing in the record differentiates these plaintiffs from college fraternities everywhere. The general rule recognized by the courts is that fraternities are not entitled to tax exemption because they exist primarily for the convenience of their members and are mainly concerned with providing them with board, lodging and recreation, while any educational or charitable purposes are of secondary importance. Iota Benefit Ass’n v. County of Douglas, 165 Neb. 330, 85 N.W.2d 726 (Sup.Ct.1957); Anno. “Exemption from taxation of college fraternity or sorority house,” 66 A.L.R.2d 904 (1959) [Id. at 612]
Plaintiff argues that the Sigma Phi Epsilon test unduly narrows the level of educational use sufficient to qualify for the exemption, that the proper standard is one of use which is educational in nature and which provides a community benefit, and that its fraternity meets this standard by providing needed student housing, encouraging community and charitable activities, and fostering responsible living outside the dormitory system. As defendant correctly points out, however, because the factual situation in this case is very similar to that found in Sigma Phi Epsilon, and since plaintiff has neither demonstrated that it is organized for educational purposes nor shown that it conducts a systematic course of instruction on its premises, plaintiff’s proposed test should be rejected and an exemption based on § 3.26 should not be granted.
As noted above, the purposes for which plaintiff was organized, as listed in the articles of incorporation, are
to perpetuate the mutual friendship, to promote the best interest of its members in connection with college life, and to provide its members with the convenience of a clubhouse.
As in Sigma Phi Epsilon, this document clearly indicates that plaintiff is organized for essentially social, not educational, purposes. Additionally, since plaintiff’s witness Robert Behot testified that there is no direct instruction or systematic learning system in existence at the fraternity, under Sigma Phi Epsilon plaintiff has failed to show that it is “operated” for educational purposes. Therefore, plaintiff’s request for a § 3.26 exemption must be denied since it has failed to show that it is either organized or operated in substantial part for educational purposes.
*389 Having decided that plaintiff is not “organized and operated in a substantial part for ... educational purposes,” it is unnecessary to examine whether it “demonstrates these aims in its programs and activities.”
Because plaintiff has not met its burden of demonstrating its property is “actually used for colleges” or is “organized and operated in substantial part for ... educational purposes” as required by § 3.6 and § 3.26, it is not entitled to a local property tax exemption. Therefore, the Clerk of the Tax Court is directed to enter judgment dismissing plaintiff’s complaint for each of the 1981, 1982 and 1983 tax years.